IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CONWAY CONSULTING GROUP, LLC and MIGUEL A. CONWAY, individually, | |
| Plaintiffs, | CIVIL NO. 06-1011 (DRD) |
| v. | RE: |
| EMPOWER, INC., INTELLIGROUP, INC., JOHN DOE AND ABC COMPANY. INC. | DECLARATORY JUDGMENT, UNFAIR COMPETITION, INJUNCTIVE RELIEF |
| Defendants. | |

## ANSWER TO COMPLAINT AND COUNTERCLAIM

TO THE HONORABLE COURT:

COME NOW Intelligroup, Inc. (hereinafter "Intelligroup") and Empower, Inc. (hereinafter "Empower"), represented by the undersigned counsel and very respectfully state, allege and aver as follows in connection with Plaintiff's January 4, 2006 Verified Complaint ("Complaint").

1. Paragraph 1 of the Complaint is denied.

2. Paragraph 2 of the Complaint is denied. However, it is admitted that Miguel A. Conway began his employment with Empower on or about November 3, 1997 and voluntarily resigned on or about February 22, 2005.

3. Paragraph 3 of the Complaint is denied. However, it is admitted that, as a condition of his employment, on or about November 1, 1997, Miguel A. Conway signed a Non-Solicitation Agreement.

4.      Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of the Complaint.  However, it is admitted that by his own admission Miguel A. Conway has been improperly soliciting Empower's customers and employees, amongst them the Puerto Rico Environmental Quality Board and the Teacher's Retirement Board.

5.      Paragraph 5 of the Complaint is denied.

6.      Paragraph 6 of the Complaint is denied.

7.      Paragraph 7 of the Complaint avers conclusions of law that do not require a responsive pleading. In the alternative, it is denied.

8.      Paragraph 8 of the Complaint avers conclusions of law that do not require a responsive pleading.

9.      Paragraph 9 of the Complaint avers conclusions of law that do not require a responsive pleading.

10.     Paragraph 10 of the Complaint avers conclusions of law that do not require a responsive pleading.  In the alternative, it is denied.

11.     Paragraph 11 of the Complaint avers conclusions of law that do not require a responsive pleading.

12.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of the Complaint.  In the alternative, it is denied.

13.     It is admitted that upon information and belief Co-Plaintiff, Miguel A. Conway, is domiciled in Puerto Rico. Defendants deny information or knowledge sufficient to form a belief as to Mr. Conway's position in Conway Consulting Group, LLC.

14.     Paragraph 14 of the Complaint is denied as drafted. However, it is admitted that Empower is incorporated in the state of Michigan, with its principal place of business in Atlanta, GA and is authorized by the Puerto Rico Department of State to do business in Puerto Rico.

15.     Paragraph 15 of the Complaint is denied as drafted. However, it is admitted that Intelligroup is the parent company of Empower, is incorporated and headquartered in New Jersey.

16.     The allegations contained in paragraph 16 of the Complaint relating to John Doe do not require a responsive pleading from Defendants. In the alternative, it is denied.

17.     The allegations contained in paragraph 17 of the Complaint relating to ABC Company do not require a responsive pleading from Defendants. In the alternative, it is denied.

18.     As to Paragraph 18 of the Complaint, it is admitted that Miguel A. Conway began his employment with Empower on or about November 3, 1997 and voluntarily resigned on or about February 22, 2005. Defendants deny information or knowledge sufficient to form a belief regarding the rest of the allegations. In the alternative, it is denied.

19.     Paragraph19 of the Complaint is denied as drafted. However, it is admitted that on or about November 1, 1997, Miguel A. Conway signed a Non-Solicitation Agreement and that, due to the nature of the consulting business in which Empower was and is engaged, Empower requires all its employees to sign Non-Solicitation Agreements.

20.     Paragraph 20 of the Complaint is denied. Defendants respectfully refer the Court to the Non-Solicitation Agreement, attached hereto as Exhibit A, for its actual language and full text.

21.    Paragraph 21 of the Complaint is denied. Defendants respectfully refer the Court to the Non-Solicitation Agreement, attached hereto as Exhibit A, for its actual language and full text.

22.    Paragraph 22 of the Complaint is denied. Defendants respectfully refer the Court to the Non-Solicitation Agreement, attached hereto as Exhibit A, for its actual language and full text.

23.    Paragraph 23 of the Complaint is denied. Defendants respectfully refer the Court to the Non-Solicitation Agreement, attached hereto as Exhibit A, for its actual language and full text.

24.    Paragraph 24 of the Complaint is denied. Defendants respectfully refer the Court to the Non-Solicitation Agreement, attached hereto as Exhibit A, for its actual language and full text.

25.    Paragraph 25 of the Complaint is denied as drafted. However, it is admitted that on or about March 30, 2005, Intelligroup's General Counsel sent Miguel A. Conway a letter reminding him of his continuing obligations under the Non-Solicitation Agreement. Defendants respectfully refer the Court to the referenced letter, attached hereto as Exhibit B, for its actual language and full text.

26.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 of the Complaint. In the alternative, it is denied.

27.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 of the Complaint.

28.    Paragraph 28 of the Complaint is denied. However, it is admitted that on or about October 2005, one of Empower's Client Services Executive informed a representative of the Puerto Rico Environmental Quality Board of the existence of the Non-Solicitation Agreement with Miguel A. Conway.

29.     Paragraph 29 of the Complaint is denied. However, it is admitted that on or about November 2, 2005, Miguel A. Conway sent an email to various members of Intelligroup's General Counsel, Intelligroup's legal department and Intelligroup's Vice President of Human Resources with a copy to various members of Empower's management team, Intelligroup's Chief Executive Officer, Kenneth Suria, and employees of the Puerto Rico Environmental Quality Board "urg[ing] Intelligroup Inc to provide such copy by EOB today along with any concerns you may have as a company." On or about November 3, 2005, Meredith O'Marra replied to Mr. Conway's email and forwarded a copy of the Non-Solicitation Agreement as requested. Defendants respectfully refer the Court to the referenced e-mail, attached hereto as Exhibit C, for its actual language and full text.

30.     Paragraph 30 of the Complaint is denied.

31.     Paragraph 31 of the Complaint is denied.

32.     Paragraph 32 of the Complaint is denied.

33.     With respect to the allegations contained in paragraph 33 of the Complaint, Defendants repeat and re-allege each and every admission, denial, averment, and statement contained in the preceding paragraphs of this Answer with the same force and effect as though set forth here in full.

34.     Paragraph 34 of the Complaint avers conclusions of law that do not require a responsive pleading. In the alternative, it is denied.

35.     The first sentence of Paragraph 35 of the Complaint avers conclusions of law that do not require a responsive pleading. The second sentence of Paragraph 35 is denied.

36.     Paragraph 36 of the Complaint avers conclusions of law that do not require a responsive pleading.

-5-

37.    The first Paragraph 37 of the Complaint avers conclusions of law that do not require a responsive pleading.  The second sentence of Paragraph 37 is denied.

38.    Paragraph 38 of the Complaint avers conclusions of law that do not require a responsive pleading.

39.    With respect to the allegations contained in paragraph 33 of the Complaint, Defendants repeat and re-allege each and every admission, denial, averment, and statement contained in the preceding paragraphs of this Answer with the same force and effect as though set forth here in full.

40.    Paragraph 40 of the Complaint is denied.

41.    Paragraph 41 of the Complaint is denied.

42.    Paragraph 42 of the Complaint is denied.

43.    Paragraph 43 of the Complaint avers conclusions of law that do not require a responsive pleading. In the alternative, it is denied.

44.    Paragraph 44 of the Complaint avers conclusions of law that do not require a responsive pleading. In the alternative, it is denied.

45.    Paragraph 45 of the Complaint is denied.

46.    Paragraph 46 of the Complaint avers conclusions of law that do not require a responsive pleading.

47.    Paragraph 47 of the Complaint is denied.

48.    Paragraph 48 of the Complaint avers conclusions of law that do not require a responsive pleading. In the alternative, it is denied.

49.    Paragraph 49 of the Complaint is denied.

## AFFIRMATIVE DEFENSES

50.      Defendants incorporate hereto by reference, all denials and averments in the preceding answer and make them part of these affirmative defenses.

51.      Plaintiffs' claims are barred by the applicable statute(s) of limitations.

52.      The Complaint fails to state a valid cause of action upon which relief can be granted.

53.      Miguel A. Conway breached the Non-Solicitation Agreement executed on or about November 1, 1997.

54.      The Non-Solicitation Agreement is not governed by Puerto Rico law.

55.      Defendants' actions, positions and decisions with respect to its relationship with Miguel A. Conway have been at all relevant times, justified, reasonable, and consistent with the Non-Solicitation Agreement and its applicable laws.

56.      Plaintiffs have not suffered any damages resulting from any improper or illegal acts and/or omissions of Defendants, as none have been incurred.

57.      To the extent that Plaintiffs have suffered any damages, which is denied, they have failed to mitigate the same.

58.      In the event that Plaintiffs suffered any damages, which is denied, any such damages were intentional and/or self-inflicted and/or the result of their own negligence and/or Plaintiffs' failure to deal in good faith and/or as a prudent and reasonable businessman and/or by the acts or omission of persons or entities other than Defendants, for which Defendants cannot be held responsible.

59.      The damages sought in the Complaint are unfounded, excessive or speculative, and thus, are not recoverable.

60.     Any recovery of any of the damages prayed for by Plaintiffs would amount to an unjust enrichment.

61.     Plaintiffs' claims are barred by the doctrine of waiver.

62.     Plaintiffs have acted in bad faith and fraudulently ("dolo") and are, thus, barred from any compensation.

63.     Miguel A. Conway accepted Empower's job proposal and entered into the Non-Solicitation Agreement by its own voluntary will, without any type of pressure or coercion from Defendants.

64.     The Non-Solicitation Agreement is a valid, legal mechanism to protect Empower's relationships with its employees, customers and prospective customers from unfair competition.

65.     Defendants duly complied with all applicable laws pertaining to the Non-Solicitation Agreement.

## COUNTERCLAIM

By way of Counterclaim, Defendants aver the following:

## I.
## STATEMENT OF FACTS
## INTRODUCTION

1.     Empower seeks injunctive relief and damages against Defendant Miguel Conway (hereinafter "Conway") and his new company Conway Consulting Group. LLC (hereinafter "CCG") because he has breached and continues to breach the terms of his Non-Solicitation Agreement with Empower and has engaged in other tortious and unlawful conduct.

2.     Conway joined Empower on or about November 3, 1997.

3.     Prior to joining Empower, on or about November 1, 1997, Conway signed a Non-Solicitation Agreement.

4.     By executing the Non-Solicitation Agreement, Conway agreed that in the event that his employment with Empower was terminated by whatever reasons, he would not "directly or indirectly on behalf of the Company, as an employee, aide, representative or otherwise, solicit, contact, provide services to on behalf of himself or another company, or contact with any of the Company's former, current or potential customers for a period of two (2) years following the date of his termination." See Exhibit A.

5.     By executing the Non-Solicitation Agreement, Conway also agreed that for a period of two years following the termination of his employment he would not "directly or indirectly on behalf of himself or another party, encourage, solicit, or otherwise attempt to persuade any employee of the Company to leave the employ of the Company." See Exhibit A.

6.     The Non-Solicitation Agreement is a valid, legal mechanism to protect Empower's relationships with its employees, customers and prospective customers from unfair competition and is not governed by the laws of Puerto Rico.

7.     The Non-Solicitation Agreement was not negotiated nor executed in Puerto Rico.

8.     While Conway may be a resident of Puerto Rico today, he was not a resident of Puerto Rico during his entire tenure with Empower.

9.     Shortly after Conway began his employment with Empower he listed New Jersey as his state of residence.

10.    Empower is a corporation organized under the laws of the State of Michigan with a principal place of business in Atlanta, GA.

11.     During the course of his employment with Empower, Conway worked in Georgia, Wyoming, Texas, Michigan and Puerto Rico.

12.     The Non-Solicitation Agreement does not provide that the Agreement is governed by Puerto Rico law.

13.     Now that Conway resigned to start his own company to unfairly compete against Empower, he claims that Puerto Rico law applies and intends to invalidate an Agreement which he voluntarily entered into and, upon which Empower relied during the course of his employment when deciding to grant access to confidential, proprietary and trade secret information and corporate assets.

14.     Conway was a member of Empower's management team and attended management meetings.

15.     While employed by Empower, Conway held the position of Practice Leader for the Strategic Consulting Group.

16.     Due to his position in Empower and under the conditions set forth in his Non-Solicitation Agreement, Conway had access to Empower's trade secrets, confidential and proprietary information.

17.     On or about February 22, 2005, Conway gave his notice of resignation from Empower.

18.     After seven years with Empower, Conway voluntarily resigned his employment and began a competing business.

19.     Almost immediately after his resignation Conway began violating the terms of his Non-Solicitation Agreement by approaching Empower's customers and employees.

20.    Conway began soliciting Empower customers and employees to whom he was introduced during the course of his employment with Empower.

21.    Conway continued such actions despite receiving a cease and desist letter on or about March 2005.

22.    Conway misappropriated Empower's assets, trade secrets, confidential information, and proprietary information to create a strategic plan to form his own consulting company to wrongfully compete against Empower and to poach Empower's customers, prospects and employees, including specifically to market to and sell to those governmental entities and agencies which were identified as Empower customers or prospects and to whom Conway had been introduced by virtue of his position with Empower.

23.    Now, armed with Empower's trade secret and confidential proprietary information, Conway and CCG are actively marketing to Empower's customers and prospects and are actively soliciting Empower employees.

A. Background of Empower

24.    Empower is a public sector consulting firm formed in 1996.  Its primary business objective is to provide systems integration services and strategic technology consulting services to K-12 and higher education, state and local government, and non-profit customers.

25.    Empower has built a strong reputation for its systems integration services, project management skills and technology consulting services over the years with various government agencies and private sector customers in Puerto Rico.

26.    Empower spends considerable amounts of time, money and effort in developing and maintaining a productive relationship and goodwill with its customers.

B. Empower Confidential Information and Assets

.      27.      To service customers effectively, Empower maintains confidential records about customers, including information regarding customer financial data, likely future customer needs, and its pipeline report that identifies prospective new customers and existing customers with new project needs and tracks Empower's efforts to market to those companies.

28.      Empower's information about its customers, including specifically its pipeline information, is not generally available from other sources and has been developed over a period of years by Empower.  For example, only Empower management team members and business development managers have access to pipeline project information.

29.      Empower also maintains its own confidential information regarding its business operations, including technical information (including functional and technical specifications, designs, drawings, analysis, research processes, systems and procedures, computer programs, methods, ideas, and "company know how"), business information (including sales and marketing research, materials, plans, accounting and financial information, credit information on customers, lists containing names, addresses and business habits of customers, sales reports, and price lists), company financial information, marketing strategies, pending projects and proposals, and compensation information.

30.      Empower maintains and enforces rules to safeguard the confidentiality of its confidential information.  For example, the Empower Employee Handbook provides in part as follows:

### 3.8 NON-DISCLOSURE/CONFIDENTIALITY

The protection of confidential business information and trade secrets is vital to the interests and success of Empower Solutions.

\*\*\*

Employees who improperly use or disclose trade secrets or confidential information will be subject to disciplinary action, including termination of employment and legal action, even if they do not actually benefit from the disclosed information.

### 8.2 TREATMENT OF CUSTOMER INFORMATION

Upon termination of employment with Intelligroup, Inc. for whatever reason, the Employee should promptly surrender to Intelligroup, Inc. all copies, in whatever form, any Intelligroup, Inc. information, in the Employee's possession, custody or control, and not take with him/her any Intelligroup, Inc. Confidential Information that is embodied in a tangible medium of expression. Employees must also avoid disclosing information, which is for use in conducting Company business and is confidential in nature. You have an ethical responsibility not to disclose such information to others, including the investing public and other not needing to know within the Company.

31.     In February 2004, Intelligroup, Inc. adopted a Code of Business Conduct and Ethics ("the Code of Ethics").

32.     The Code of Ethics was included in Empower's Employee Handbook and all Empower employees signed acknowledgment forms indicating that they read and understood the information in the Handbook and that they read and agreed to abide by the terms of the Code of Ethics.

33.     Conway signed the Acknowledgment Form in or about April 2004.

34.     The Code of Ethics requires that employees "must act in the best interest of the Company." The Code of Ethics further provides that "employees must maintain the confidentiality of confidential information entrusted to them by the Company or other companies, including our

suppliers and customers, except when disclosure is authorized by a supervisor or legally mandated." Further, the Code of Ethics states, "employees should seek to protect the Company assets . . . employees must use the Company's assets and services for legitimate business purposes of the Company and not for any personal benefit or the personal benefit of anyone else."

35.     During his employment with Empower, Conway used Empower's time and money to further his own personal interests including using Company time, resources and money to obtain PMP Certification which he uses to help sell his and his new company's services.

36.     Conway, after voluntarily resigning, is using Empower's confidential and proprietary information for his personal benefit and the benefit of his new company, CCG.

C. Conway Used Company Assets And Confidential Information To Create A Competing Company, Recruit Empower Employees, And To Market To Empower Customers

37.     After voluntarily resigning from Empower, Conway used the confidential, proprietary and trade secret information, which Empower had entrusted to him under the conditions set forth in his Non-Solicitation Agreement, to market to and solicit business from Empower's customers and prospects.

38.     To date, Conway and Conway Consulting have solicited Empower customers, prospects and employees in violation of the Non-Solicitation Agreement between Conway and Empower.

39.     He further used the confidential, proprietary and trade secret information to recruit Empower employees.

40.     Conway and CCG have poached two of Empower's employees, Carlos Santiago and Ada Vasquez, and have induced them, in turn, to violate the Non-Solicitation Agreements they had

-14-

executed with Empower.

41.     Furthermore, Conway has attempted to recruit other Empower employees, including Robert Neshem.

42.     Conway and CCG have tortiously interfered with Empower's business and contractual relations with its customers and employees.

43.     By way of their ill-gotten methods, Conway and CCG have also poached the business (through Oracle) of an Empower customer, the Teacher's Retirement Board, a contract with a value of over $550,000.00.

## II.
## FIRST CLAIM FOR RELIEF
## PERMANENT INJUNCTION INSTRUCTING PLAINTIFFS TO CEASE AND DESIST THEIR SOLICITING IN VIOLATION OF THE NON-SOLICITATION AGREEMENT

44.     Paragraphs 1 to 43 are hereby incorporated by reference.

45.     Conway is in breach of the Non-Solicitation Agreement as Conway after the termination of his employment, directly and/or indirectly, continues to solicit Empower customers, prospects and employees in violation of the Non-Solicitation Agreement between Conway and Empower.

46.     Plaintiffs' aforesaid acts have caused Empower to suffer injury and damages of such a nature that monetary damages alone cannot adequately compensate Empower for the loss suffered.

47.     The aforesaid acts of Plaintiffs are greatly and irreparably damaging to Empower and will continue to be greatly and irreparably damaging to Empower unless enjoined by this Court since Empower is without an adequate remedy at law.

## III.
## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT

48.     Paragraphs 1 to 47 are hereby incorporated by reference.

49.     As a result of Conway's breach of his Non-Solicitation Agreement Empower lost revenue and profits with its customers: the Teacher's Retirement Board and the Puerto Rico Environmental Quality Board.

50.     Conway has acted in bad faith and has fraudulently ("dolo") breached the Non-Solicitation Agreement costing Empower approximately $650,000.00 in lost revenue and profits generated by its consultants.

## IV.
## THIRD CLAIM FOR RELIEF
## DAMAGES FOR TORTUOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONS

51.     Paragraphs 1 to 50 are hereby incorporated by reference.

52.     Empower has spent considerable amounts of time, money and effort in developing and maintaining a strong reputation and a productive relationship and goodwill with its customers in Puerto Rico.

53.     Conway and CCG have and continue to tortuously interfere with Empower's business and contractual relations with its customers and employees.

54.     Not only have Conway and CCG actively solicited Empower's clients, resulting in over $650,000.00 in lost revenue and profits, but they have also poached two of Empower's employees and induced them to violate their own Non-Solicitation Agreements.

55.     Not content with their actions, Plaintiffs have also tried to recruit Robert Neshem and

induce him to violate his Non-Solicitation Agreement as well.

56.    As a result of Plaintiffs willful and malicious conduct and their tortuous interference, notwithstanding Empower's reminders to Conway of his contractual obligations under the Non-Solicitation Agreement, Empower is entitled to recover damages in an amount no less than $400,000.00.

## V.
## FOURTH CLAIM FOR RELIEF
## DAMAGES FOR MISAPPROPRIATION OF TRADE SECRETS, CONFIDENTIAL AND PROPRIETARY INFORMATION

57.    Paragraphs 1 to 56 are hereby incorporated by reference.

58.    In spite of knowing that Empower has gone to great lengths to protect its trade secrets, confidential and proprietary information and having agreed to abide by Empower's Employee Handbook and the Code of Ethics, in clear violation of his obligations with the company, Conway misappropriated Empower's assets, trade secrets, confidential and proprietary information to create a strategic plan to form his own consulting company in order to illegally compete against Empower and to poach Empower's customers, prospects and employees.

59.    Plaintiffs' actions have caused disruptions and anxieties among Empower's employee base and have contributed to Conway and CCG's success in unfairly competing with Empower, for which Empower is entitled to recover damages in an amount no less than $400,000.00.

## VI.
## FIFTH CLAIM FOR RELIEF
## ATTORNEYS' FEES, AND EXPENSES

60.    Paragraphs 1 to 59 are hereby incorporated by reference.

61.    As a result of Plaintiffs willful and malicious conduct, Empower and Intelligroup are

entitled to recover from Defendant actual damages, and the attorneys' fees and the expenses it has incurred in bringing this action.

62.     Even in the event that this Honorable Court decides that Plaintiffs have not been obstinate and temerarious in their pursuit of this action, Empower and Intelligroup are still entitled to recover attorney's fees inasmuch as this case is subject to the depecage procedure in that the laws of different states are applicable to the suit.

## VII.
## DEMAND FOR RELIEF

WHEREFORE, it is respectfully requested that the Complaint be dismissed and that the relief sought therein be denied.  It is further requested that the Counterclaim be granted including any and all costs, expenses, and attorney's fees in which Empower and Intelligroup have been or will be required to incur by reason of these proceedings. Empower also respectfully requests that this Honorable Court enters an order:

1.     Instructing Conway, directly and indirectly, in his individual and in all other capacities, to comply with the Non-Solicitation Agreement and stop soliciting Empower past, current and prospective clients and employees.

2.     Instructing Plaintiffs, their agents, servants, employees, representatives, and all others in active concert or participation with them be enjoined and restrained during the pendency of this action and permanently thereafter of making defamatory remarks in their intent to discredit Empower before current and past clients.

3.     That Plaintiffs be ordered to compensate Empower for its lost revenue and profits, and for all damages herein claimed in an amount not less than $1,450,000.00;

4.      That Empower be awarded such other and further relief as is just and equitable, and the payment of costs, interest, and attorney fees.

I HEREBY CERTIFY that on this same date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Kenneth C. Suria, Esq., ksuria@welo.net and Alberto G. Estrella, Esq., aestrella@welo.net.

Respectfully submitted, in San Juan, Puerto Rico, this 16th day of March, 2006.

McCONNELL VALDÉS
Attorneys for
Intelligroup, Inc.
and Empower, Inc.
270 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-2619
Fax: (787) 759-2792

By:  s/ Juan A. Marqués Díaz
USDC-PR No. 211803
jam@mcvpr.com